THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL FIELDS, Defendant-Appellant.

Fourth District    No. 4—90—0020

Opinion filed September 27, 1990.—Rehearing denied October 30, 1990.

STEIGMANN, J., specially concurring.

Daniel D. Yuhas and Jon McPhee, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant Michael Fields appeals his conviction of attempt (residential burglary) and argues his trial counsel was ineffective because (1) a jury instruction on an included offense was not tendered; and (2) counsel failed to object to prejudicial testimony from police officers. We affirm.

In the early morning hours of July 4, 1989, Danville police received a call from Betty Brooks, who lived at 422 North Gilbert in Danville. Brooks testified she was awakened at 1:30 a.m. by a loud noise that sounded like a loud slam. About five minutes later, Brooks heard a scraping noise. After investigating, Brooks discovered her bathroom window was broken and raised all the way to the top. Brooks also discovered the screen had been torn. Brooks did not see who broke her window.

Officer Keith Garrett testified that when he arrived at the scene, he saw Officer Brent Young holding defendant at gunpoint on the sidewalk in front of the victim's house. Garrett testified he recognized the defendant. When he handcuffed the defendant, Garrett noticed defendant's clothes were damp. When Garrett inspected the broken bathroom window, he saw the screen was cut and there was a red chalk mark on the vinyl casing around the window on the outside. On the ground about seven feet to the left of the window, Garrett found a red brick. When he was at the police station, Garrett testified he also noted fresh scratches on defendant's lower back.

Officer Mark Forsythe testified Brooks' call was logged in at 1:36 a.m. on July 4 and he was the first to arrive at the scene. He drove past 422 North Gilbert, turned into an alley one house south and circled behind the victim's house. Forsythe did not see anyone in front or behind the house. As Forsythe went back around to the front of the victim's house, he observed Officer Young had stopped a male suspect in front of 422 North Gilbert. Forsythe testified he recognized the suspect to be the defendant. Forsythe then testified he knew defendant's mother and sister lived at 404 North Gilbert and he assumed defendant lived with them. Young told Forsythe defendant was wearing a pair of children's sweat pants cut as a shirt and had a pair of shorts on underneath his blue jeans.

Forsythe then observed the broken window and the torn screen. He noticed also the outside frame of the window was dented and the dent was covered with a red powdery substance. Forsythe saw a red brick on the ground six feet from the broken window. Forsythe walked to the apartment building where defendant lived (404 North Gilbert) and saw a pile of bricks stacked next to this building. The

bricks had the same striations or markings as the one Forsythe had seen under the broken window.

Forsythe testified that on the sidewalk where defendant was stopped by Officer Young, he found small green needles that were the same as those on a bush in front of the residence at 420 North Gilbert. In the front yard of 420 North Gilbert, Forsythe saw footprints in the dew on the grass near four to five large bushes. He also observed the ivy plants in the front of 420 North Gilbert looked like they had been stepped on. Forsythe stated he did not see any green needles on the sidewalk beyond where defendant was stopped by Officer Young.

Officer Brent Young also testified Brooks' call was received at 1:36 a.m. on July 4. He arrived at the scene within 1 to 1½ minutes, stopped in front of 422 North Gilbert and saw defendant standing on the property line between 420 and 422. Young testified defendant "came out of nowhere." Young got out of his car and ordered defendant to lie down on the sidewalk. After defendant was handcuffed, Young noticed defendant's clothes were damp. Young approached the front porch of 420 North Gilbert and found a two-sided dagger on the walkway and a pair of gloves in the bushes. One glove was suspended on one of the bush branches. Young found quite a few green needles from these bushes a couple of feet from the spot where he stopped defendant on the sidewalk. Young also noticed a trail of green needles from the first spot to where defendant was stopped on the sidewalk. Later, at the police station, Young observed a green needle similar to those found on the sidewalk on defendant's left buttock and fresh scratches on defendant's lower back.

Karen Beck, defendant's girlfriend, testified for defendant that she lived with defendant at 404 North Gilbert. Beck stated defendant had been drinking at his sister's apartment on July 3, 1989, until 12:30 a.m. on July 4, when Beck and defendant returned to their apartment. Beck and defendant then had a fight about the laundry. Defendant took some of Beck's son's clothes, ripped them to fit him like a shirt, and left the apartment to make a phone call. Beck stated defendant left the apartment about 1:39 a.m. by the backdoor on the alley. Beck recalled the time to be 1:39 a.m. because she remembered looking at the clock on the videocassette recorder. After 20 minutes passed, Beck walked down the hallway of her apartment building to the front entrance where she saw flashlights outside. Beck testified on direct that defendant's mother then came out of her apartment at the top of the stairway and said, "Oh, my God, Mike is in jail again." Beck recalled it had drizzled that morning. Beck also admitted being

placed on probation earlier in 1989 for deceptive practices. On cross-examination, Beck stated she voluntarily told an investigator that defendant left their apartment at "1:30 something" on July 4.

In rebuttal, Larry Rollins, a Danville police investigator, testified he spoke with Beck on July 25, 1989, when Beck came to see him voluntarily. At that time, Rollins stated Beck told him she and defendant were back in their apartment on July 4, 1989, about one hour before defendant left "about 1:30 a.m." Beck also told Rollins defendant did not break into anyone's apartment, but if he did, it was the booze that made him do it.

Defendant first argues his trial counsel was ineffective for not tendering an instruction on the included offense of criminal damage to property. The State argues the failure to tender such an instruction was a matter of trial tactics and discretion of trial counsel and did not constitute ineffective assistance of counsel.

■■ Under the test adopted in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, representation by counsel is ineffective when it is determined that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Where, as here, the claimed incompetence involves failure to tender an included offense instruction, prejudice to a defendant would exist if the evidence would permit a jury rationally to find defendant guilty of the lesser offense and acquit him of the greater offense. *Keeble v. United States* (1973), 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847, 93 S. Ct. 1993, 1995; *People v. Mitchell* (1984), 105 Ill. 2d 1, 13-14, 473 N.E.2d 1270, 1276.

■ The offense of criminal damage to property requires proof that the defendant knowingly damaged any property of another without consent. (Ill. Rev. Stat. 1989, ch. 38, par. 21—1(1)(a).) The offense of attempt (residential burglary) requires proof that the defendant intended to enter, without authority, the dwelling place of another with intent to commit a felony or theft therein. Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 19—3(a).

■ We conclude counsel's decision not to tender an instruction on the lesser offense was a matter of trial strategy. The evidence established defendant was found near the victim's home within minutes of Brooks' call to the police. Further, the victim testified she first heard a loud noise, presumably glass breaking, and then heard, several minutes later, a scraping sound, most likely the sound of the window screen being cut. Defendant's theory at trial was that he was not the perpetrator but only an innocent bystander. Defendant did not contend, as he does now on appeal, that he did not intend to enter the

victim's house but merely intended to damage her window. Counsel's actions at trial were aimed at providing the jury with only two options: finding defendant guilty or not guilty of attempt (residential burglary). (See *People v. Barnard* (1984), 104 Ill. 2d 218, 231-32, 470 N.E.2d 1005, 1009-10.) We find the evidence supports the offense of attempt (residential burglary) but not the lesser offense of criminal damage to property. Accordingly, we discern no prejudice to defendant in counsel's representation.

■■ ■ Defendant next contends his trial counsel was ineffective for not objecting to the testimony of two police officers that they recognized the defendant at the scene. Defendant argues the testimony served no purpose but to imply to the jury that defendant had a prior criminal record. We disagree. Incompetency of trial counsel is not established by the mere failure to object to evidence. (*People v. Murphy* (1978), 72 Ill. 2d 421, 438, 381 N.E.2d 677, 686; *People v. Stokes* (1981), 95 Ill. App. 3d 62, 69, 419 N.E.2d 1181, 1188.) The decision of when to object to evidence is a matter of trial strategy. (*People v. Clark* (1987), 160 Ill. App. 3d 877, 883, 513 N.E.2d 937, 941; *Stokes*, 95 Ill. App. 3d at 69, 419 N.E.2d at 1188.) One trial strategy available to defendant's counsel in this case was to ignore the testimony of the police officers to avoid unduly emphasizing it to the jury. (*People v. Campbell* (1987), 163 Ill. App. 3d 1023, 1031, 516 N.E.2d 1364, 1370.) The testimony of both officers did not necessarily imply defendant had a prior criminal record and was admissible. (*People v. Rogers* (1940), 375 Ill. 54, 59, 30 N.E.2d 77, 79.) Additionally, even though defendant's contention is without merit, it loses further credence where the evidence shows defendant's own witness on direct testimony stated, "Oh, my God, Mike is in jail again."

■ Finally, defendant argues his trial counsel was ineffective for not seeking a limiting instruction regarding the following testimony of Karen Beck on direct:

"I walked down the hallway, through my apartment, to the front entrance; and I looked outside; and I saw flashlights. And at this time I was at the bottom of the stairway. Mike's mother comes out of her apartment, which is exactly at the top of the stairway, and says, 'Oh, my God, Mike is in jail again.' "

We note this testimony was presented by defendant's witness on direct. Any prejudice to defendant, though inadvertent, was of defendant's own making. (*People v. Bridgeforth* (1972), 51 Ill. 2d 52, 66, 281 N.E.2d 617, 624-25.) Moreover, defendant's counsel may well have decided to leave well enough alone and not risk drawing more attention to the testimony by asking for a limiting instruction. Such a

decision is trial strategy which is not subject to appellate review. *People v. Gallardo* (1983), 112 Ill. App. 3d 764, 768, 445 N.E.2d 1213, 1217; *People v. Phillips* (1982), 110 Ill. App. 3d 1092, 1104, 443 N.E.2d 655, 663.

For the foregoing reasons, the defendant's conviction and sentence for attempt (residential burglary) are affirmed.

Affirmed.

GREEN, J., concurs.

JUSTICE STEIGMANN, specially concurring:

While I concur in the judgment affirming the defendant's conviction, I do so for reasons different from those set forth in the majority opinion.

The only issue defendant raises on appeal is his claim that he was denied the effective assistance of counsel at his trial. The most serious of trial counsel's alleged errors is his failure to tender a jury instruction on the lesser included offense of criminal damage to property. The majority opinion concludes that trial counsel's decision not to tender such an instruction was a matter of trial strategy. My difficulty with this conclusion is that the record on appeal contains nothing touching upon that issue.

In *People v. Kunze* (1990), 193 Ill. App. 3d 708, 550 N.E.2d 284, this court was also confronted with an argument that the defendant's lawyer at trial did not provide effective assistance of counsel. In addressing that argument, this court made the following observations:

> "Where, as here, consideration of matters outside of the record is required in order to adjudicate the issues presented for review, the defendant's contentions are more appropriately addressed in proceedings on a petition for post-conviction relief. (Ill. Rev. Stat. 1987, ch. 38, pars. 122—1 through 122—8.) We therefore decline to adjudicate in this direct appeal Kunze's contentions concerning the alleged incompetence of Kunze's trial counsel. An adjudication of a claim of ineffective assistance of counsel is better made in proceedings on a petition for post-conviction relief, when a complete record can be made and the attorney-client privilege no longer applies." *Kunze*, 193 Ill. App. 3d at 725-26, 550 N.E.2d at 296.

I think the practice we followed in *Kunze* should be followed here as well. If resolution of the defendant's claim that he received ineffective assistance of counsel were deferred to a hearing on a post-convic-

tion petition which raised that issue, then the court and both parties would have the benefit of *directly* hearing trial counsel's explanation as to why he took the actions he did and failed to take other actions.

The record on direct appeal *almost never* contains anything explaining the trial tactics of defense counsel. If, as here, those trial tactics are to be the subject of scrutiny, then a record should be developed in which they can be scrutinized. We have no such record in this case. Only a hearing on a post-conviction petition can provide that record.

For the reasons stated, I would affirm the judgment of the trial court, decline to adjudicate on this direct appeal defendant's contentions concerning the alleged incompetence of his trial counsel, and defer the matter for resolution by the filing of a post-conviction petition.