# Illinois Official Reports

## Supreme Court

<div style="border:1px solid">

## *In re S.L.*, 2014 IL 115424

</div>

| | |
|---|---|
| Caption in Supreme Court: | *In re* S.L., a Minor (The People of the State of Illinois, Appellant, v. Julia F., Appellee). |
| Docket No. | 115424 |
| Filed | January 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where parental unfitness is based on lack of progress during any nine-month period, statute calls for that period's specification; but the absence thereof was a mere pleading defect which was forfeited when not raised in the trial court (where it could have been corrected) after the parties proceeded as if all possible nine-month periods were relevant—claim of failure to state a cause of action rejected. |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Marion County, the Hon. Michael D. McHaney, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part.<br>Circuit court judgment affirmed in part and reversed in part. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield, and Matt Wilzbach, State's Attorney, of Salem (Michael A. Scodro, Solicitor General, and Ann C. Maskaleris, Assistant Attorney General, of Chicago, and Patrick Delfino, Stephen E. Norris and Rebecca A. McCormick, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Bill J. Milner and Craig W. Griffin, of Salem, for appellee.

Justices

JUSTICE THEIS delivered the judgment of the court, with opinion. Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    This case comes to us from an order of the circuit court of Marion County finding, in pertinent part, respondent, Julia F., unfit under section 1(D)(m)(iii) of the Adoption Act (750 ILCS 50/1(D)(m)(iii) (West 2010)) and terminating her parental rights to S.L., a minor child, because she failed to make reasonable progress toward the return of S.L. during any nine-month period after the end of the initial nine-month period following the adjudication of neglect. The appellate court reversed this finding of unfitness after agreeing with Julia's contention, raised for the first time on appeal, that the State did not comply with section 1(D)(m)(iii) in that it did not file a separate notice specifying the particular nine-month period or periods upon which it was relying. 2012 IL App (5th) 120271, ¶ 44. For the reasons that follow, we reverse that portion of the appellate court's judgment and affirm the circuit's court finding of unfitness under section 1(D)(m)(iii).

¶ 2                                    BACKGROUND

¶ 3    S.L., the daughter of Julia F. and Bruce V., was born on May 3, 2002.[1] She was adjudicated abused or neglected on November 29, 2007, and was made a ward of the court on January 3, 2008. The State alleged in its petition for the adjudication of wardship that S.L. was a neglected minor pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2006)) in that she was in an environment injurious to her welfare because Julia was not safeguarding her physical welfare. The conditions that gave rise to the removal of S.L. were insect bites, apparent dog bites, substantial bruising to her shoulder and groin, and

---

[1]Bruce did not appear or participate in the proceedings below and is not a party to this appeal.

unclean living conditions. At each of the five subsequent permanency hearings, the goal was for S.L. to return to Julia within 12 months, while custody and guardianship of the minor remained with the Department of Children and Family Services (DCFS). On July 21, 2010, the goal was changed to one of substitute care pending court determination of termination of parental rights. Julia was continuously represented by counsel throughout the proceedings.

¶ 4      On November 30, 2011, the State filed an amended petition for the termination of parental rights. Paragraph 9 alleged that Julia was unfit to have a child based on one or more of the following grounds:

> "A. She has failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minor from her care, as defined by 750 ILCS 50/1(D)(m)(i).
>
> B. She has failed to make reasonable progress toward the return of the child to her within nine months after an adjudication of neglect under Section 2-3 of the Juvenile Court Act of 1987, being the period of November 29, 2007 to August 29, 2008, as defined by 750 ILCS 50/1(D)(m)(ii).
>
> C. She has failed to make reasonable progress toward the return of the minor to her during any nine month period after the end of the initial nine month period following the adjudication of neglect, as defined by 750 ILCS 50/1(D)(m)(iii).
>
> D. She is unable to discharge parental responsibilities as supported by competent evidence from a licensed clinical psychologist of mental impairment, and there is sufficient justification to believe that the inability to discharge parental responsibilities shall extend beyond a reasonable time period."

The State concedes that it did not file a separate notice, as specified under section 1(D)(m)(iii) of the Adoption Act (750 ILCS 50/1(D)(m)(iii) (West 2010)), identifying which nine-month period or periods were the subject of the termination proceeding.

¶ 5      On February 24, 2012, the trial court conducted a fitness hearing. During the hearing, the State recognized, consistent with the amended petition to terminate parental rights, that the initial nine-month period after the adjudication of neglect began on November 29, 2007, and thus would have ended on August 29, 2008.[2]

¶ 6      Relevant to the allegation contained in paragraph 9(C) of the amended petition, the State presented the testimony of Danya McDaniel, Julia's caseworker from June 2008 until April 2010. McDaniel testified that when she drafted the permanency report in September 2008, Julia's overall rating was unsatisfactory. McDaniel testified that although Julia had engaged in services, she lacked the "ability to internalize and demonstrate the learning of whatever the

---

[2]Consequently, there were four consecutive nine-month periods running from the end of the initial period to the date of the fitness hearing. These four periods spanned from August 29, 2008 to August 29, 2011.

services were." McDaniel explained that there were several incidents throughout the case that indicated a lack of stability, including Julia's choice to move multiple times. According to McDaniel, Julia showed a lack of good judgment because she chose boyfriends who were physically abusive and she associated with people who were not appropriate due to their criminal behavior or sex offender status. McDaniel also rated Julia as unsatisfactory on the requirement of obtaining and maintaining appropriate and safe housing because her home was unclean, had rodents and cockroaches, and was too small for the number of people living there.

¶ 7    McDaniel further testified that Julia had supervised visits with S.L. every week, which McDaniel occasionally observed. She tried to help Julia initiate appropriate interaction with S.L. during these visits. Julia's behavior toward S.L., however, was sometimes not age appropriate and she would use inappropriate language. Julia had been allowed unsupervised visits with S.L. for a short period of time, but due to the unsanitary condition of her residence and Julia's questionable boyfriends, the unsupervised visits were suspended. In March 2009, McDaniel completed another service plan review. She again gave Julia an overall progress rating of unsatisfactory because of "poor judgment, lack of stability, [and] situations that would put a child [S.L.'s] age at risk, [including] *** bouncing from man to man [and] bouncing from home to home."

¶ 8    During McDaniel's oversight of Julia's case, which spanned almost two years, she found Julia's progress unsatisfactory and believed that she had not made sufficient progress toward correcting the conditions that led to S.L.'s removal. McDaniel testified that Julia was willing to do what was asked of her, but she did not make demonstrable improvement in her decision-making regarding her choice of boyfriends and roommates or in the way she interacted with S.L.

¶ 9    Rachel Kissner, Julia's caseworker from March 2011 until the fitness hearing, testified that she prepared a service plan review and evaluation of Julia in September 2011. Kissner supervised the visits between Julia and S.L. and rated Julia's interaction with the child as unsatisfactory because Julia struggled to engage in age appropriate interactions with S.L. Kissner observed a lack of interaction during visits and would have to direct Julia to engage S.L. in activities. Kissner testified that Julia was not firm enough in disciplining S.L., that she looked to Kissner to tell her what to do, and that S.L. was very confused about her situation. Kissner testified that during the period of time she had the case, she could not say that she had seen improvement in the way Julia interacted with S.L.

¶ 10    After the State rested, Julia's attorney moved for a directed verdict on all counts of the amended petition except paragraph 9(C). The trial court denied the motion as to paragraph 9(D) and took the motion under advisement as to the other two counts. During Julia's subsequent testimony, her counsel elicited answers on points that encompassed all four nine-month periods following the adjudication of neglect. She testified regarding her service plans throughout the time that S.L. had been in the custody of DCFS and since the beginning of her case. She testified that throughout the whole time period she maintained contact with caseworkers and "completed everything that they [had] wanted [her] to complete" with the exception of certain counseling. She further testified regarding specific activities and services which encompassed each of the time periods.

¶ 11　　Following the fitness hearing, the trial court entered an order finding Julia and Bruce unfit. Concerning Julia, the trial court found that the State proved by clear and convincing evidence that she met the definition of an unfit parent as alleged in paragraphs 9(C) and 9(D) of the amended petition. The trial court granted Julia's motion for a directed finding on the remaining two allegations. On June 11, 2012, after a best interest hearing, the trial court entered an order terminating Julia and Bruce's parental rights to S.L. and authorized DCFS to consent to S.L.'s adoption.

¶ 12　　On appeal, Julia raised for the first time that the finding of unfitness based upon paragraph 9(C) of the amended petition must be reversed because the State failed to file a separate pleading, pursuant to section 1(D)(m)(iii) of the Adoption Act, notifying her which nine-month period or periods it was relying upon. 2012 IL App (5th) 120271, ¶¶ 36, 37. In reversing the trial court's finding of unfitness based upon paragraph 9(C), the appellate court rejected the State's forfeiture argument and concluded that, because the State did not comply with the Adoption Act's notice pleading provision, the trial court could not terminate Julia's parental rights based on an allegation that was not in conformity with the statute. *Id.* ¶ 44. The appellate court found that the portion of the statute requiring the notice pleading is as much a part of the allegation of unfitness as the basic provision that the parent had failed to make reasonable progress toward the return of the child. *Id.* ¶ 39. Consequently, the appellate court held that the State's duty to comply with that portion of the statute may not be forfeited by the failure of a parent to raise the issue in the trial court. *Id.* The appellate court also reversed the trial court's finding of unfitness due to mental impairment as alleged in paragraph 9(D) of the amended petition after concluding that it was against the manifest weight of the evidence. *Id.* ¶ 59.

¶ 13　　This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 14　　　　　　　　　　　　　　　　　ANALYSIS

¶ 15　　As it did before the appellate court, the State contends that Julia forfeited her claim that it failed to comply with the statutory notice requirement contained in section 1(D)(m)(iii) because she failed to raise the issue during the trial court proceedings, thereby denying the State the opportunity to remedy what was a pleading defect. Julia asserts that the forfeiture rule is inapplicable because the State must disclose the specific nine-month period or periods at issue in order to state a cause of action under section 1(D)(m)(iii).

¶ 16　　In reviewing a statute, our framework is a familiar one. Our objective "is to ascertain and give effect to the intent of the legislature." *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56. The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *Id.* We will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent of the legislature. *Id.* We review *de novo* questions of statutory construction. *In re D.D.*, 196 Ill. 2d 405, 418 (2001). Similarly, when a challenge is raised to the sufficiency of a pleading, we apply *de novo* review. *In re Kenneth J.*, 352 Ill. App. 3d 967, 973 (2004).

¶ 17    Although termination of parental rights proceedings involve fundamental liberty interests, they are civil in nature and governed by the Code of Civil Procedure (Code). See, *e.g.*, *In re J.R.*, 342 Ill. App. 3d 310, 315-16 (2003). Section 2-612(c) of the Code provides that "[a]ll defects in pleadings, either in form or substance, not objected to in the trial court are waived." 735 ILCS 5/2-612(c) (West 2010). The waiver or forfeiture rule does not do away, however, with the necessity of stating a cause of action in any case. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 61-62 (1994). Specifically, courts in this state recognize that the forfeiture rule is relaxed when the State's termination petition fails to state a cause of action. See, *e.g.*, *Kenneth J.*, 352 Ill. App. 3d at 973. In connection with petitions for termination, the requirement of pleading with specificity simply requires an allegation that the parent is unfit, and identification of the specific statutory grounds on which the charge of unfitness is based. *In re D.C.*, 209 Ill. 2d 287, 295 (2004); accord *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005). The question then in this case is whether the State's defective notice resulted in the failure to state a cause of action.

¶ 18    Section 1(D)(m)(iii) of the Adoption Act sets forth the following relevant basis for the termination of parental rights:

> "D. 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption. The grounds of unfitness are any one or more of the following ***.

> * * *

> (m) Failure by a parent *** (iii) to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act ***." 750 ILCS 50/1(D)(m)(iii) (West 2010).

¶ 19    In 2006, pertinent to the issue before us, the legislature added the following language to the above provision:

> "Notwithstanding any other provision, when a petition or motion seeks to terminate parental rights on the basis of item (iii) of this subsection (m), the petitioner shall file with the court and serve on the parties a pleading that specifies the 9-month period or periods relied on. The pleading shall be filed and served on the parties no later than 3 weeks before the date set by the court for closure of discovery, and the allegations in the pleading shall be treated as incorporated into the petition or motion. Failure of a respondent to file a written denial of the allegations in the pleading shall not be treated as an admission that the allegations are true." *Id.*

¶ 20    We find the allegations in the amended petition in this case sufficient to state a cause of action under section 1(D)(m)(iii) and to inform Julia as to the nature of the neglect charge. The amended petition alleged that Julia was unfit because she "failed to make reasonable progress toward the return of the minor to her during any 9 month period after the end of the initial nine month period [being the period of November 29, 2007 to August 29, 2008] following the adjudication of neglect, as defined by 750 ILCS 50/1(D)(m)(iii)." The State thus set forth the specific statutory ground upon which it based its allegation of unfitness, and apprised Julia that it sought to terminate her parental rights, in part, based on her failure to make reasonable progress toward S.L.'s return during any nine-month period from August 29, 2008, forward.

The amended petition therefore met the criteria previously set forth by this court for a sufficient pleading in a termination case. *D.C.*, 209 Ill. 2d at 295; *Gwynne P.*, 215 Ill. 2d at 349; see also *In re J.R.*, 342 III. App. 3d 310, 316 (2003) (petition did not fail to state cause of action where it sought to terminate parental rights citing section 1(D)(q) of the Adoption Act for finding mother unfit, but failed to specify mother could "permanently" lose her parental rights as required by statute); *cf. In re Rauch*, 45 Ill. App. 3d 784, 787-89 (1977) (the State's termination petition failed to state a cause of action when the petition failed to allege that the mother was an unfit parent, and did not set forth an alleged ground for unfitness).

¶ 21　　The State's pleading error in not providing notice to Julia under section 1(D)(m)(iii) does not change our determination. This provision does not require the State to specify the nine-month period or periods at issue in the termination petition itself but, rather, provides that the State shall file with the court and serve on the parties a notice pleading stating the time period or periods at issue at least three weeks before discovery closes. While this provision states that the "allegations in the [notice] pleading shall be treated as incorporated into the petition or motion" (750 ILCS 50/1(D)(m)(iii) (West 2010)), we do not interpret this language, as Julia suggests, to mean that when the State does not file a notice specifying the period, it fails to state a cause action. If we were to interpret the statute as Julia urges, a petition alleging unfitness pursuant to section 1(D)(m)(iii) would not state a cause of action when the petition itself was filed, but only later if the notice is served on the parties and filed with the court before the close of discovery. We find such an interpretation illogical and unworkable.

¶ 22　　We are also not persuaded by Julia's claim that the notice provision is part of the cause of action because the legislature specified that a parent's failure to file a written denial of the allegations "shall not be treated as an admission that the allegations are true." *Id.* The State is not claiming that her failure to file a written denial of the allegations should somehow affect the outcome of this case, or be treated as an admission. We fail to see how the relied upon language informs our interpretation of the statute, or changes our determination that a defective notice does not result in the failure to state a claim.

¶ 23　　Additionally, under Julia's suggested interpretation, there would be no incentive for a parent to object to a defective notice in the trial court. On the contrary, a parent who did not receive notice, and was ultimately found unfit, could raise the issue for the first time on appeal, thereby receiving a second opportunity to defend against the allegations if the State chose to proceed on remand. Such a delay would be detrimental to the welfare of the child whose future is at stake because it would prevent him or her from obtaining a prompt, just, and final resolution of his or her status. As this court has previously emphasized, it is not in a child's best interest for his or her status to remain in limbo for extended periods of time. See *In re D.S.*, 198 Ill. 2d 309, 328 (2001); see also Ill. S. Ct. R. 311(a)(5) (eff. Feb. 26, 2010).

¶ 24　　The parties do not dispute that the legislature added the notice pleading provision to the statute, because in a case such as this, where there is more than one possible nine-month period from which the State could seek to prove unfitness, such notification of the time period allows a parent to better prepare a defense. We recognize in the instant case that while the State did not specify in a separate notice, or at the hearing, which period or periods formed the basis for

its allegation of unfitness, it is apparent from the record that the parties proceeded as though all four nine-month periods were relevant.

¶ 25 The two caseworkers, McDaniel and Kissner, provided testimony covering all four periods regarding their respective conclusions that Julia's progress was unsatisfactory. McDaniel was Julia's caseworker during the first three nine-month periods at issue, while Kissner was her caseworker during the fourth nine-month period. Similarly, Julia defended against all four time periods. Specifically, she testified regarding the service plans during the entire time that S.L. had been in the custody of DCFS. She further testified that throughout the whole time period she maintained contact with her caseworkers and completed everything that they had wanted her to complete with the exception of some counseling.

¶ 26 Julia has not indicated any specific harm or prejudice to her as a result of the State's error. She does not claim the lack of notice caused surprise or hindered the preparation of a proper defense. Instead, Julia requests that we find, in essence, an implied harm when the State fails to provide proper notice because of the fundamental rights at stake in a termination case and the overall importance of the statutory notice provision. Julia's argument finds no support in our caselaw and would be detrimental to the welfare of S.L. by unnecessarily delaying resolution of her permanent placement.

¶ 27 For all these reasons, we conclude that the State's failure to file a separate notice pleading identifying the nine-month period or periods at issue constitutes a pleading defect, not a failure to state a cause of action, which under section 2-612(c) of the Code was forfeited by Julia because she failed to raise the issue in the trial court when it still could be remedied.

¶ 28                                                    CONCLUSION

¶ 29 We reverse the portion of the appellate court's judgment which reversed the circuit court's order finding Julia unfit under section 1(D)(m)(iii) of the Adoption Act. We do not disturb that portion of the appellate court's holding which reversed the circuit court's finding of unfitness due to mental impairment as alleged in paragraph 9(D) of the amended petition as it was not an issue presented by the State for our review.

¶ 30 Appellate court judgment affirmed in part and reversed in part.

¶ 31 Circuit court judgment affirmed in part and reversed in part.