**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190681-U

Order filed April 6, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* ADOPTION OF J.R.Y. and D.R.Y. | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| (Jacob R.Y. and Renae N.Y., | ) | Tazewell County, Illinois. |
| | ) | |
|     Petitioners-Appellees, | ) | Appeal No.   3-19-0681 |
| | ) | |
|     v. | ) | Circuit No.   18-AD-36 |
| | ) | |
| Debra Y., | ) | The Honorable |
| | ) | Timothy J. Cusack |
|     Respondent-Appellant). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the judgment of the court.
Justice O'Brien concurred in the judgment.
Justice Wright dissented.

_____

**ORDER**

¶ 1    *Held*:   (1) Petition to adopt sufficiently alleged ground of unfitness where it stated that biological mother "has not shown a reasonable amount of care or concern for the minor children;" (2) mother was not denied effective assistance where counsel's failure to challenge petition or object to certain evidence was not deficient; and (3) trial court did not err in finding mother unfit and terminating her parental rights where she failed to communicate with, visit or provide financial support for her children for nearly two years.

¶ 2    Jacob R.Y. and his wife, Renae N.Y., filed a petition to adopt Jacob's biological daughters,

J.R.Y. and D.R.Y. The petition alleged that the parental rights of the children's biological mother,

Debra Y., should be terminated because she "has not shown a reasonable amount of care or concern for the minor children." Following a hearing, the trial court found Debra unfit. Following a best interest hearing, the trial court terminated Debra's parental rights and granted Jacob and Renae's petition to adopt. The trial court later entered a judgment for adoption. Debra appeals, arguing that (1) the petition to adopt was insufficient; (2) she was denied effective assistance of counsel; and (3) the trial court erred in finding her unfit and terminating her parental rights. We affirm.

¶ 3                                    BACKGROUND

¶ 4        Jacob R.Y. and Debra Y. were married and had two daughters together: J.R.Y., who was born in 2009, and D.R.Y., who was born in 2011. Jacob and Debra divorced in 2014 and entered into a joint parenting agreement. Thereafter, Jacob married Renae. In December 2015, at a visitation exchange, Debra assaulted Renae. After that, Debra's visitation with the children was restricted and supervised. After October 2017, Debra had no visitation with the children.

¶ 5        In November 2018, Jacob and Renae filed a petition to adopt J.R.Y. and D.R.Y. The petition alleged that Debra "has not shown a reasonable amount of care or concern for the minor children" in that she (1) "has not contributed financially to the needs of the children;" (2) "has unresolved mental health issues and has refused to seek appropriate treatment;" and (3) "has failed to visit with the children." Jacob and Renae asked the court to terminate Debra's parental rights and enter a judgment for adoption. Debra denied the allegations of the petition.

¶ 6        The trial court appointed a Guardian Ad Litem (GAL) to represent the children's interests. The GAL filed a motion for a psychological evaluation of Debra based on allegations in the petition that she suffers from "mental health issues."

¶ 7        Dr. Ted Chapin performed a psychological evaluation of Debra and prepared a report on May 9, 2019. According to Dr. Chopin, Debra "appears to have a mild neurocognitive disorder,"

2

as well as "significant personality factors and psychological symptoms" that make her unable to "validly report her psychosocial history, complete psychological testing, or communicate in a manner conducive to respectful interpersonal-expression, listening, mutual understanding and problem resolution." He found that Debra "appears to deny and have little to no insight into her personal problems and appears disinterested or unable to gain any insight." Debra was "unable to understand or explain how or why she has not seen her children since the fall of 2017." She denied any wrongdoing but blamed "all outside parties involved in the matter including: [c]ourts, Children's Home, DCFS, [c]ase [w]orkers, previous psychological evaluators, assessment reports, psychological testing, the children's fathers, and the current evaluator, his testing and support staff."

¶ 8        Dr. Chapin opined that Debra "likely suffers from a combination of debilitating personality disorders and severe psychological symptoms," including "compulsive, histrionic and paranoid personality disorders, traits or features with anxiety, somatization, bipolar (mania) and/or likely undetermined thought disorder." Dr. Chapin concluded that Debra's "current and foreseeable ability to function as a healthy parent in the lives of her children or as a responsible co-parent with their children's fathers is likely to be significantly impaired."

¶ 9        On September 20, 2019, the GAL prepared a written report. According to that report, Debra had six supervised visits with her children, facilitated by Children's Home, from September 11, 2017, to October 23, 2017. The visits were discontinued because of Debra's actions and treatment of the Children's Home employees. Children's Home employees reported concerns about Debra's anger issues, her failure to follow directions, and her aggressive manner, which the children observed. According to the GAL, "Debra seems to lack any insight into her mental health problems that may negatively affect her parenting and co-parenting ability." The children, who are now in

3

third and fifth grade, remember Debra getting angry and yelling during visits. They both love Renae and are happy to have her adopt them. Based on the GAL's meetings with Debra, Debra's psychological examination, reporting from Children's Home, and the GAL's interview with Jacob, Renae, J.R.Y., and D.R.Y., the GAL recommended that Debra's rights be terminated and a judgment for adoption be entered.

¶ 10    On October 8, 2019, a hearing was held on the petition to adopt. At the hearing, Jacob testified that he and Debra divorced in 2014 and entered into a joint parenting agreement. Immediately thereafter, problems arose. In December 2015, during a custody exchange, Debra grabbed Renae by the throat and pinned her against the back seat of her car. The children were present during this incident. The police were called, and Debra was arrested. As a result of that incident, Jacob filed an order of protection against Debra, as well as a petition to restrict Debra's parenting time.

¶ 11    After that, Debra's visits with the children had to be supervised by Children's Home. Problems arose when Debra became aggressive with Children's Home employees. Debra's visits were terminated in mid-2016. Her visits began again in 2017 but were terminated shortly thereafter.

¶ 12    According to Jacob, Debra last saw her children in October or November 2017. She has had no contact with the children since then. She has not sent any cards, letters or gifts to them. Debra was ordered to pay child support but has never paid any. She has not financially contributed to the children's expenses. Jacob believes that Debra has mental health issues preventing her from effectively parenting her children and believes that Debra is "in complete denial that she has any [mental health] problems." During Jacob's marriage to Debra, Debra attempted suicide twice and had severe mood swings.

4

¶ 13 Jacob admitted that he received text messages from Debra in which she expressed concern for the children during a storm and prior to an orthodontic procedure. Debra told Jacob she was not allowed to talk to him about the children. Jacob did not know of any reason why Debra would not be allowed to do so.

¶ 14 After her divorce from Jacob, Debra became involved with Daniel S. and had a son with him in 2015. The son, D.S., resides with Daniel. Daniel testified that Debra had supervised visitation with D.S. before visitation was terminated entirely. Daniel testified that during his relationship with Debra, she got "very aggressive very easily." Sometimes when J.R.Y. and D.R.Y. were present, Debra yelled, screamed and became aggressive toward him for no reason. Beginning in late 2015, he noticed Debra having severe mood swings. He had no knowledge that Debra ever sought mental health treatment.

¶ 15 Debra testified that she is currently staying in a shelter for abused women. She claims she has been abused since J.R.Y. was born. She claimed that even though she pled guilty to assaulting Renae by choking her, Renae "was the one that was aggressive." She said, "I pled guilty because I had to."

¶ 16 Debra testified that she was verbally told by Children's Home to have no contact with her children. When there were storms, she texted her children's fathers because she was concerned for her children's well-being. She testified that the only reason she was not in her children's lives was because she was told she could not be. Otherwise, she "always would be."

¶ 17 She stated that she has "been nonstop abused and controlled by Tazewell County Courthouse ***, DCFS, and Children's Home since December of 2015 if not before." With respect to her mental health, she stated: "I don't have a mental disorder, and I've never been diagnosed with a mental disorder." She testified that she sought counseling on her own during her separation

5

and divorce. She denied ever being offered mental health treatment or medication. She also denied attempting suicide. Debra denied ever taking any psychiatric medication. She also denied that she was currently seeking mental or psychological treatment, stating: "I don't have a reason to."

¶ 18 Debra testified that she has experienced physical health problems and had to move in with her mother. She testified that she worked at two different jobs for approximately three weeks each during the last two years. She admitted that she was charged and pled guilty to battery of a woman, Carolyn Apt, in the Tazewell County Courthouse. Debra claimed Apt was the instigator in that incident, stating "it was the same thing with Renae in the car."

¶ 19 With respect to the December 2015 incident with Renae, Debra testified that she pushed back Renae after she "started to come out at me." Debra denied choking Renae. Debra denied having any physical contact with John Giraudo, the husband of a former GAL.

¶ 20 Debra testified that she last saw J.R.Y. and D.R.Y. on October 23, 2017. She said she was told by Children's Home that she could no longer see her children. She denied that she has ever been ordered to pay child support. She has been ordered to pay expenses for her children but has not done so.

¶ 21 Renae testified that on December 27, 2015, she went with Jacob to drop off J.R.Y. and D.R.Y. at Debra's house. After they arrived, Debra came to the car, opened the door, started screaming at Renae, grabbed her by the throat, and pinned her against the back of her seat. The police were called, and Debra was arrested and charged. Debra pled guilty. At the time, Renae's daughter was in the back seat of the car, and J.R.Y. and D.R.Y. were outside. Debra was holding her infant son in her arms.

¶ 22 The GAL's report was admitted into evidence without objection. The report from Dr. Chapin was admitted into evidence over objection from Debra's counsel. At the end of the hearing,

the trial court concluded that Debra was unfit because she "fail[ed] to maintain a reasonable degree of interest, concern or responsibility as to [her children's] welfare." Specifically, the court stated: "[S]he has not contributed financially to the needs of the children; she has unresolved mental health issues; refused to seek appropriate treatment; and she's failed to visit with the children for a vast amount of time."

¶ 23    On October 21, 2019, a best interest hearing was held. At the conclusion of the hearing, the trial court stated that Debra's parental rights were terminated and that Jacob and Renae's petition for adoption "will be granted." A written order entered on that date reflected that Debra's parental rights were terminated. On November 25, 2019, the trial court entered a judgment order for adoption, declaring J.R.Y. and D.R.Y. to be Jacob and Renae's children.

¶ 24                                              ANALYSIS

¶ 25                                                 I

¶ 26    Debra first argues that the petition to adopt is defective because it fails to sufficiently allege any grounds of unfitness.

¶ 27    The sufficiency of a pleading is an issue of law, which we review *de novo*. *In re Andrea D.*, 342 Ill. App. 3d 233, 242 (2003). The Adoption Act (750 ILCS 50/1 *et seq.* (West 2018)) "requires the petition to state that the parent is unfit and the grounds therefore." *In Interest of Rauch*, 45 Ill. App. 3d 784, 788 (1977). An allegation of unfitness is a material and essential element of a petition. *Id*. Only substantial compliance with the Act is required. *Id*.

¶ 28    "The essential test of the sufficiency of a petition is whether it reasonably informs the respondent of a valid claim against her." *In re M.S.*, 210 Ill. App. 3d 1085, 1092 (1991). A petition that sets forth a statutory ground of unfitness by tracking the language of the Act sufficiently apprises the respondent of the claim against her. *Id*. at 1092-93; *Andrea D.*, 342 Ill. App. 3d at 242.

7

¶ 29 The grounds of unfitness are set forth in section 1(D) of the Act. 750 ILCS 50/1(D) (West 2018). One such ground is "[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." *Id*. §1(D)(b). "Because the language of section 1(D)(b) of *** is in the disjunctive, any of the three elements may be considered on its own as a basis for unfitness." *In re C.E.*, 406 Ill. App. 3d 97, 108 (2010).

¶ 30 Here, the petition alleges: "Respondent, DEBRA R. Y***, has not shown a reasonable amount of care or concern for the minor children." While this language is not identical to the language contained in section (1)(D)(b) of the Act, it is sufficiently similar to apprise Debra that her fitness is being challenged and the specific ground of unfitness alleged by Jacob and Renae. The petition substantially complies with the Act.

¶ 31 II

¶ 32 Next, Debra argues that she was denied effective assistance of counsel. She claims her counsel was ineffective for failing to (1) challenge the sufficiency of the petition, (2) object to the introduction of Dr. Chapin's psychological report, (3) object to the introduction of the GAL's report, and (4) object to the introduction of criminal acts she allegedly committed.

¶ 33 "[P]arents are entitled to effective assistance of counsel in proceedings that seek the termination of their parental rights." *In re W.L.W. III*, 299 Ill. App. 3d 881, 885 (1998). To show ineffective assistance of counsel, the respondent must demonstrate that trial counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the outcome of the proceedings would have been different. *Id*.

¶ 34 When reviewing counsel's performance, there is a strong presumption that his or her actions were the result of sound trial strategy and not incompetence. *People v. Burrows*, 148 Ill. 2d 196, 232-33 (1992). "Allegations arising from matters of judgment or trial strategy will not

8

support a claim of ineffective assistance of counsel." *People v. Scott*, 278 Ill. App. 3d 468, 473 (1996).

¶ 35                                                          A

¶ 36        Debra first argues that her counsel was ineffective for failing to challenge the sufficiency of the adoption petition. As set forth above, the petition was not defective. It substantially complied with the Act by alleging a statutory ground of unfitness. Thus, Debra's counsel did not err in failing to challenge the petition. See *id*. at 473-74 (counsel's failure to challenge indictment not ineffective assistance where indictment was not fatally defective).

¶ 37                                                          B

¶ 38        Next, Debra claims that her counsel was ineffective for failing to object to Dr. Chapin's report. However, the record does not support this contention. When Jacob and Renae's attorney moved for the admission of Dr. Chapin's report into evidence, Debra's counsel objected. The trial court overruled the objection, finding that the report was admissible. Because Debra's counsel objected to the report, this allegation of ineffective assistance fails.

¶ 39                                                          C

¶ 40        Debra also claims that her counsel was ineffective for failing to object to admission of the GAL's report because it contained hearsay contained in Dr. Chapin's report.

¶ 41        A GAL appointed under the Adoption Act may submit a report recommending that a petition to adopt be granted or denied. See *In re Adoption of K.B.D.*, 2012 IL App (1st) 121558, ¶ 14; *In re Adoption of D.*, 317 Ill. App. 3d 155, 157 (2000). Because courts want GALs to provide as much information as possible about the best interests of the minor, their reports may contain hearsay. See *In re Marriage of Karonis*, 296 Ill. App. 3d 86, 91 (1998); *In re Marriage of Wycoff*, 266 Ill. App. 3d 408, 416 (1998). "[W]here evidence is admissible at trial, *** counsel is not

9

required to perform the useless act of objecting to this evidence, and his conduct cannot be faulted for such failure." *People v. Jackson*, 357 Ill. App. 3d 313, 323 (2005).

¶ 42    Here, the GAL's report contained hearsay from Dr. Chapin. However, that did not make the report inadmissible. See *Karonis*, 296 Ill. App. 3d at 91; *Wycoff*, 266 Ill. App. 3d at 416. Because the GAL's report was admissible, Debra's counsel did not provide ineffective assistance by failing to object to admission of it. See *Jackson*, 357 Ill. App. 3d at 323.

¶ 43                                                        D

¶ 44    Additionally, Debra claims that her counsel erred in failing to object to questions from Jacob and Renae's counsel about her battery of Apt and her alleged physical assault of Giraudo.

¶ 45    "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Ill. R. Evid. 404(b) (eff. Jan 1, 2011). However, "[s]uch evidence may be admissible for other purposes." *Id.* "It is well established that evidence of other crimes is not admissible to demonstrate a defendant's propensity to commit a crime." *People v. Lewis*, 2015 IL App (1st) 130171, ¶ 46. But, "[o]ther crimes evidence is relevant when it 'has any tendency to make the existence of any fact that is of consequence to the determination of [the] action more or less probable than it would be without the evidence.' " *Id.* (quoting *People v. Illgen*, 145 Ill. 2d 353, 364-65 (1991)).

In a criminal trial, admitting other crimes/prior bad acts evidence has the potential to be used improperly to "prove the character of a person in order to show action in conformity therewith." *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 65. However, at a hearing on a petition to terminate parental rights, "[t]he traditional potential for prejudice inherent in such evidence simply [is] not a factor in the matter." *Id*. Evidence of other crimes and/or prior bad acts committed by a

10

parent is relevant and admissible at a hearing on a petition to terminate parental rights. See *id*. ¶¶ 64-66.

¶ 46   Here, counsel questioned Debra about a battery she committed and a physical assault she allegedly committed. This evidence was admissible at the unfitness hearing. See *id*. Because the evidence was admissible, Debra's counsel was not ineffective for failing to object to it. See *Jackson*, 357 Ill. App. 3d at 323.

¶ 47   Even if the evidence of Debra's prior bad acts was inadmissible, her counsel's failure to object did not constitute ineffective assistance. "Incompetency of trial counsel is not established by the mere failure to object to evidence." *People v. Fields*, 202 Ill. App. 3d 910, 915 (1990). The decision of whether and when to object is a matter of trial strategy. *Id*. One trial strategy available to counsel is to ignore testimony, instead of objecting to it, to avoid unduly emphasizing it. *Id*. Because Debra's counsel was not required to object to the admission of the other crimes evidence, this claim of ineffective assistance also fails.

¶ 48                                                      III

¶ 49   Finally, Debra argues that the trial court erred in (1) finding her unfit, and (2) terminating her parental rights "without also granting the adoption petition."

¶ 50   The State must prove by clear and convincing evidence one statutory factor of unfitness for the trial court to terminate parental rights. *In re M.S.*, 302 Ill. App. 3d 998, 1002 (1999). It is not necessary to consider other findings of unfitness where sufficient evidence exists to satisfy any one statutory ground. *Id*. A court may not terminate a parent's rights on grounds not charged in the petition. *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005).

¶ 51   A reviewing court accords great deference to a trial court's finding of unfitness and will not disturb such a finding unless it is against the manifest weight of the evidence. *M.S.*, 302 Ill.

11

App. 3d at 1002. Our function is not to substitute our judgment for that of the trial court on questions regarding the evaluation of the witnesses' credibility and the inferences to be drawn from their testimony; the trial court is in the best position to observe the conduct and demeanor of the parties and witnesses as they testify. *Id*.

¶ 52 "In determining whether a parent has shown a reasonable degree of interest, concern or responsibility for a child's welfare, courts consider a parent's efforts to visit and maintain contact with the child, as well as other indicia of interest, such as inquiries in the child's welfare." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006). The parent's interest, concern and responsibility must be objectively reasonable. *Id.* A parent "is not fit merely because she had demonstrated some interest in or affection for her child." *Id*. Courts should focus on a parent's efforts, rather than success, in communicating with, visiting or otherwise showing interest in the child. *Id.* at 1065.

¶ 53                                                                 A

¶ 54 Here, Debra contends that the trial court erred in finding her unfit, asserting that the court relied on a ground not sufficiently alleged in the petition – her mental health.

¶ 55 This contention is not supported by the record. At the conclusion of the fitness hearing, the trial court stated that Debra "fail[ed] to maintain a reasonable degree of interest, concern or responsibility as to [her children's] welfare." This is the same ground of unfitness alleged by Jacob and Renae in their petition to adopt. Thus, the trial court did not improperly terminate Debra's parental rights by relying on a ground of unfitness not alleged in the petition.

¶ 56 Furthermore, the evidence supports the trial court's finding of unfitness. At the time of the hearing, Debra had not seen J.R.Y. or D.R.Y. for almost two years. During that two-year period, Debra made no effort to communicate with them, visit them, or provide them with financial support. Debra testified that she was told by Children's Home employees to have no

12

communication with her children; however, there is no court order prohibiting Debra from contacting J.R.Y. and D.R.Y. While the text messages Debra sent to Jacob show that she has some interest in J.R.Y. and D.R.Y., two messages over the course of nearly two years fails to show objectively reasonable interest, concern or responsibility. The clear and convincing evidence supports the trial court's finding of unfitness based on Debra's failure to maintain a reasonable degree of interest, concern or responsibility for her children.

¶ 57                                                                 B

¶ 58       Debra's final contention – that the trial court erred by finding her unfit and terminating her parental rights without granting the adoption petition – is not supported by the record.

¶ 59       Following the best interest hearing, the trial court stated that Debra's parental rights were terminated and that Jacob and Renae's petition for adoption "will be granted." One month later, the trial court entered a judgment order for adoption, declaring J.R.Y. and D.R.Y. to be Jacob and Renae's children. Thus, Debra's contention that "no formal judgment for adoption was ever entered" is refuted by the record and should be disregarded.

¶ 60                                                          CONCLUSION

¶ 61       The judgment of the circuit court of Tazewell County is affirmed.

¶ 62       Affirmed.

¶ 63       JUSTICE WRIGHT, dissenting:

¶ 64       I respectfully dissent. I would decide this appeal on the pleadings in favor of Debra, relying primarily on our supreme court's guidance in In re S.L. See 2014 IL 115424, ¶¶ 17, 20; See also In re Gwynne P., 215 Ill. 2d at 349; In re D.C., 209 Ill. 2d 287, 295 (2004); In Interest of Rauch, 45 Ill. App. 3d at 788. Here, the petition was so vague that it failed to directly allege Debra was "unfit" or identify the specific section 1(D) grounds supporting an indirect allegation of parental

13

unfitness. See In re S.L., 2014 IL 115424, ¶ 17; 750 ILCS 50/1(D) (West 2018). I respectfully disagree that the isolated words or phrases contained in this petition were sufficient to "track" the detailed language of section 1(D). Consequently, I conclude this petition did not clearly apprise Debra of the unfitness claim and was fatally deficient. See In re M.S., 210 Ill. App. 3d at 1092-93; In re Andrea D., 342 Ill. App. 3d at 242.

¶ 65        Notably, the ramifications of the vague petition carried over into the termination hearing, where the circuit court expressed some uncertainty regarding the specific section 1(D) grounds for Debra's unfitness. Similarly, the vagueness of the petition seems to have impacted the broadly worded and vague final order for adoption, where the circuit court did not identify a specific section 1(D) citation as the statutory authority for terminating Debra's parental rights. For example, the circuit court stated Debra "abandoned and deserted her children" and "failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the children" without making reference to whether the circuit court was invoking the Act under section 1(D)(n), (b), or both. See 750 ILCS 50/1(D)(n), (b) (West 2018). Again, I disagree that these grounds were sufficiently alleged in the petition to allow Debra to defend against the termination of parental rights.

¶ 66        Surely, if the petition for adoption was inadequate to clearly apprise the circuit court of the specific section 1(D) grounds for the unfitness allegation, to be included in the final order for adoption, then the petition for adoption was inadequate to clearly apprise Debra of that allegation under the standard set forth in In re S.L. See 2014 IL 115424, ¶¶ 17, 20.

¶ 67        I understand Renae would like to adopt and become the legal mother of her husband's biological children. However, Renae's intentions, no matter how honorable, cannot excuse the deficiencies contained in the petition for adoption. Quite simply, ensuring compliance with the

14

standard discussed in In re S.L. does not create an onerous burden for an adoptive parent in light of the fundamental liberty interests at stake for a biological mother facing the permanent loss of all parental rights. See In re Gwynne P., 215 Ill. 2d at 353; In re D.C., 209 Ill. 2d at 295.

¶ 68       For these reasons, I would hold that the petition for adoption failed to state a cause of action. I would reverse the circuit court's finding of unfitness, termination of Debra's parental rights, and grant of adoption to Renae with Jacob's consent as the biological father.