2023 IL App (1st) 221217-U

No. 1-22-1217

Order filed March 27, 2023.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* V.M., a Minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| Minor-Respondent-Appellee, | ) | Cook County |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 2020 JA 00238 |
| | ) | |
| K.M., | ) | |
| | ) | The Honorable |
| Respondent-Appellant). | ) | John L. Huff, and |
| | ) | Tiesha L. Smith, |
| | ) | Judges Presiding. |

_____

PRESIDING JUSTICE LAVIN delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's adjudication of neglect and abuse to the minor was not against the manifest weight of the evidence where the minor's own statements that she was sexually abused by her older brother were corroborated by the brother and respondent mother.

Additionally, respondent forfeited her claim that sexual abuse was not properly pled and did not establish that she was prejudiced by the alleged error for plain error review. We affirm.

¶ 2    This case stems from the circuit court's finding that minor Va. M., now age 11, was neglected and abused based on an injurious environment and a substantial risk of physical injury and emotional harm under sections 2-3(1)(b) and 2-3(2)(ii), (iii) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b), (2)(ii), (iii) (West 2018)).[1] Va. M. was born on January 31, 2012, and her older brother, V.M. (brother), was born on September 6, 2008, to respondent mother, K.M. (respondent). Va. M.'s father is not party to this appeal.[2] The Department of Children and Family Services (DCFS) received reports of allegations of sexual abuse of Va. M. by her brother, leading the Department to seek protective custody of both minors. In addition, DCFS learned during its investigation that respondent sometimes "whupped" Va. M. with either her hand, a belt or a shoe, in some instances leaving marks or bruises.

¶ 3    The State filed a petition to adjudicate Va. M. and her brother wards of the court, alleging they were neglected and abused due to an injurious environment and a substantial risk of physical injury and emotional harm. The circuit court subsequently granted DCFS temporary custody of Va. M. and her brother, although the court eventually allowed them to return home with respondent.

¶ 4    After an adjudicatory hearing, the court dismissed the petitions as to Va. M. and her brother, finding there was insufficient evidence of neglect and abuse to the minors. The court, however, later granted the Public Guardian's motion to reconsider the dismissal of Va. M.'s petition, concluding there was sufficient evidence to support finding her neglected and abused under the Juvenile Court Act based on her own statements that she was sexually abused, which

_____

[1]To avoid confusion, we refer to the minor as Va. M., rather than V.M. (as shown in the caption).
[2]The record indicates that brother has a different father than Va. M.

were corroborated by her brother and respondent's admissions that the incident occurred.[3] The cause proceeded to a dispositional hearing before a different judge. On July 26, 2022, the circuit court found respondent fit, willing and able to care for, protect, train and discipline Va. M., and allowed custody to stand with her. The court subsequently closed the case.

¶ 5      Respondent now appeals, challenging the lower court's adjudication of neglect and abuse to Va. M. based on the incident with her brother. For the reasons that follow, we affirm the circuit court's judgment.

¶ 6                                    I. BACKGROUND

¶ 7      We begin with the facts that led the State to file a petition to adjudicate Va. M. a ward of the court.

¶ 8      In December 2019, DCFS received a report that Va. M., then age seven, had been sexually assaulted by her older brother, then age eleven. Dedra Owens, an investigator with DCFS, went to respondent's home where respondent admitted the incident took place between the minor siblings (although she later claimed at the adjudicatory hearing that she didn't know anything about it happening) while the family was living in Minnesota, not in Illinois where the family currently resided. Respondent claimed there was already an investigation into the matter in Minnesota and that nothing had happened since the family moved to Illinois. Respondent, however, then became upset and slammed the door on Ms. Owens.

¶ 9      The next month, DCFS received another report of sexual abuse to Va. M. by her brother. Markham Police Detective Rayshonda Lewis subsequently contacted respondent about the report. Respondent again admitted the incident occurred between the minor siblings in Minnesota. Respondent told Detective Lewis that she would provide her with documentation of

---

[3]No motion to reconsider was filed with respect to the dismissal of brother's petition, so the dismissal of his petition stood.

the investigation in Minnesota, but she never did. Respondent also refused to participate in scheduling a victim sensitive interview for Va. M. When Detective Lewis tried to contact respondent again, she hung up on her, leading Detective Lewis to contact Ms. Owens.

¶ 10    On January 17, 2020, Ms. Owens interviewed Va. M. and her brother at school. During Va. M.'s interview, Va. M. admitted that the incident with her brother occurred but stated that it only happened once in Minnesota.[4] Va. M.'s brother likewise admitted that the incident occurred once in Minnesota and stated that respondent and his older sister never left him alone with Va. M. anymore. Brother further stated that he was young when the incident occurred, that he didn't know what he was doing, that he had learned his lesson and that he had attended therapy both in Minnesota and in Illinois.

¶ 11                          A. Petition for Adjudication of Wardship

¶ 12    On February 6, 2020, the State filed petitions to adjudicate Va. M. and her brother wards of the court based on the above-stated facts. Because brother is not a party to this appeal, we will only address the facts as they relate to his sister's petition. Va. M.'s petition alleged there was probable cause that she was neglected and abused due to an injurious environment and a substantial risk of physical injury and emotional harm. Specifically, the petition alleged:

> "[Va. M.] and sibling had an open case in Minnesota concerning allegations of sexual abuse between the minors. Mother agrees that the incident took place. [Va. M.'s] sibling admits that the incident took place. [Va. M.'s] sibling received an evaluation at the Mayo Clinic for sexual abuse and suicidal ideation. Services were not completed in Minnesota. [Va. M.] and sibling returned to Illinois in October 2017. In 2017 [Va. M.] stated that mother hit her with a belt leaving marks. Mother admitted to hitting [Va. M.]

_____

[4]Although Ms. Owens claimed that Va. M. also said it happened in Markham, that claim was not supported by the totality of the evidence.

and that she would not stop. Mother refused services. In September 2019 DCFS received another call concerning allegations of sex abuse. Mother was offered community-based services to evaluate the situation. Mother again refused services. In December 2019 DCFS received another call concerning sex abuse. [Va. M.] stated that there had been a new incident of sexual abuse within the last year. DCFS and law enforcement became involved and requested that the mother cooperate with a [Victim Sensitive Interview] for [Va. M.]. Mother refused to cooperate and would not bring [Va. M.] to [the] scheduled [Victim Sensitive Interview]."

¶ 13    The same day, the State filed a motion for temporary custody of Va. M. The State's motion was supported by an affidavit from Ms. Owens. Her affidavit stated that Va. M.'s case came to DCFS' attention "due to [brother] sexually abusing his sister [Va. M.]." Additionally, her affidavit stated that "[respondent] is aware of the behavior" and "is failing to protect [Va. M.]." Finally, Ms. Owens' affidavit stated that "[respondent] is putting her daughter [Va. M.] at risk and failing to protect her from sexual abuse by her 11 year old son" and that "[respondent] is not cooperating with the pending investigation or criminal investigation."

¶ 14                                  B. Temporary Custody Hearing

¶ 15    A temporary custody hearing was held for Va. M. on February 6, 2020. Following the hearing, the circuit court entered an order placing Va. M. and her brother in the temporary custody of DCFS. The court also entered a visitation order prohibiting visits between Va. M. and her brother, as well as parental visits with both siblings present.

¶ 16    We note that on February 18, 2020, a special prosecutor was appointed to the case due to a conflict given that respondent's sister was an assistant State's attorney who had taken temporary custody of one of the minors.

¶ 17    On June 22, 2020, the circuit court amended the temporary custody order to allow Va. M. to return home with her mother. While the court found there was probable cause that neglect and abuse of Va. M. existed, there was no immediate and urgent necessity to support the continued removal of the minor from her home. Additionally, the court ordered that brother not be in the home at that time and that visits between the siblings be "therapeutically limited and supervised." Va. M. has remained in the care and custody of respondent since that time.

¶ 18                           C. Adjudicatory Hearing

¶ 19    An adjudication hearing was held for Va. M. beginning on June 14, 2021.[5] The evidence presented at the hearing was largely consistent with the above facts. In addition, the circuit court admitted stipulated evidence consisting of testimony from Helema Townsend, a DCFS investigator, and one of Va. M.'s electronically recorded victim sensitive interviews that took place on February 12, 2020.

¶ 20    Ms. Townsend testified that she was assigned to Va. M.'s case after DCFS received a report that "[brother] touched his sister in a sexually inappropriate manner." Ms. Townsend tried to visit respondent's home, but responded did not allow her inside the residence. According to Ms. Townsend, respondent said the incident had already been investigated in Minnesota and that nothing was going on with her children. Ms. Townsend noted that respondent "was uncooperative throughout the entire investigation" except for one instance when respondent indicated that she was interested in services for her son. Ms. Townsend then referred the family to Epic Counseling Services. Ms. Townsend, however, testified that, to her knowledge, the family was not involved in any services when she closed their case.

---

[5]Va. M.'s adjudicatory hearing was eventually continued on November 24, 2021.

¶ 21    During Va. M.'s victim sensitive interview, Va. M. was asked what specifically happened with her brother. Va. M. spelled out "S-E-X." Va. M. claimed that she did not know what "S-E-X" meant, but she stated that it happened once with her brother when they lived in Minnesota and that it never happened after they moved to Illinois. Va. M. further stated that her mother was home when the incident occurred but that she and her brother "had the door closed" which is "why [respondent] doesn't want [them] in each other's room with the door closed" anymore.

¶ 22    Also during the interview, Va. M. stated that respondent "whup[s]" her on the butt or arm with "[h]er hand or a belt, or sometimes she doesn't have a belt so with a shoe." Va. M. said that respondent's hand never left any bruises or marks but that the belt left a mark on her forearm (which she showed the interviewer). Va. M. likewise stated that her grandmother sometimes "whup[s]" her with a belt while respondent holds her down. Va. M., however, stated that her grandmother never left any bruises or marks on her.

¶ 23    Finally, Harriett Holmes, a DCFS agent who had supervised Ms. Owens' investigation, testified at the adjudication hearing that she was assigned to the case in January 2020, after receiving "more than two" reports of allegations of sexual abuse to Va. M. We note that Ms. Holmes also testified about prior allegations of sexual abuse to Va. M. in Minnesota. The Public Defender objected to that testimony, however, on the basis that the reports from Minnesota were not certified and delegated, but the circuit court overruled the objection, noting that it would not consider the testimony for the truth of the matter asserted.

¶ 24    In any event, Ms. Holmes interviewed Va. M. in February 2020, at the DCFS office located in Harvey, Illinois.[6] During the interview, Va. M. again admitted that the allegations

---

[6]During the cross-examination of Ms. Holmes, she admitted that DCFS is required to consult with the Child Advocacy Center before interviewing a child who is suspected of being a victim of sexual abuse, but that she did not do that in this case because she was interviewing Va. M. about protective factors, rather than allegations of sexual abuse.

surrounding the incident with her brother were true. Ms. Holmes claimed that Va. M. indicated someone had inappropriately touched her butt, testimony the circuit court ultimately found to be incredible. Nevertheless, Va. M. stated that she was told not to talk about the inappropriate touching because it was "family business" and "what happens in the home stays in the home." According to Ms. Holmes, those statements led her to seek protective custody of Va. M.

¶ 25    As to Va. M.'s adjudication, the Public Guardian and the special prosecutor argued there was sufficient evidence of neglect and abuse to Va. M. based on Va. M.'s own statements during the interviews, her brother and respondent's admissions that the incident occurred, and respondent's refusal to participate in the investigation or in any services for Va. M.

¶ 26    The circuit court initially disagreed with those arguments and dismissed both Va. M. and her brother's petitions for adjudication. In doing so, the court noted that "nothing happened between the two [siblings] since they moved to Markham." The court further noted that it found Ms. Holmes' testimony "less than credible" and that Ms. Holmes seemed to be "searching for evidence to establish some kind of neglect or abuse."

¶ 27    The Public Guardian, however, successfully moved to reconsider the circuit court's ruling as to Va. M's petition, arguing that Va. M.'s own statements were corroborated by her brother and respondent's admissions that the abuse occurred. In addition, the Public Guardian argued that the court should have allowed the Minnesota records into evidence and attached those records to the motion.

¶ 28    In response, respondent argued the court was correct in dismissing Va. M.'s petition because there was no evidence showing that Va. M. was unsafe, and furthermore, the court properly determined the Minnesota records were inadmissible without proper certification.

¶ 29                         D. Neglect and Abuse Findings

¶ 30    After hearing arguments from the parties, the circuit court first found that, while the Minnesota records were properly withheld, the statements in the records were "disconcerting." Turning to the merits of the Public Guardian's motion to reconsider, the court concluded that it had erroneously dismissed Va. M's petition because there was sufficient evidence to show that Va. M. was neglected and abused due to an injurious environment and a substantial risk of physical injury and emotional harm.

¶ 31    As to the alleged sexual abuse of Va. M., the court noted that whether it occurred in Minnesota or Illinois was "of no moment" since the relevant question was whether the abuse occurred. And to that end, the court noted:

> "[Va. M.] stated there was, and she said s-e-x – she spelled it out – in Minnesota. Now, that activity, it was undefined. There was no real description of it. It could have been a kiss. It could have been a hug. It could have been something else. However, [respondent], the mother admitted to Detective Lewis that there was an incident of sex abuse in Minnesota. And, moreover, [brother] admitted to Deedra [*sic*] Owens that he had touched [Va. M.] in an inappropriate sexual way."

The court found that brother and respondent's own admissions that the abuse occurred, sufficiently corroborated that "[Va. M.] was to one degree or another sexually abused in Minnesota."

¶ 32    Additionally, the court found that respondent's subsequent actions (or lack thereof) in refusing to engage in any services for Va. M. were harmful to the minor. Finally, the court further found that Va. M.'s statement that respondent hit her with a belt was corroborated "by [Va. M.] showing the wound or scar on her arm" during her interview. The court thus concluded the above evidence was sufficient to establish neglect and abuse to Va. M.

¶ 33    We note that although the State properly pled abuse under section 2-3(2)(ii) of the

Juvenile Court Act, it did not specifically cite sexual abuse under section 2-3(2)(iii) of that Act in

Va. M.'s petition, even though the State's allegations were predicated on sexual abuse. As set

forth above, however, the circuit court concluded there was sufficient evidence of sexual abuse

to Va. M. to support a finding on the basis.

¶ 34                              E. Dispositional Hearing

¶ 35    A dispositional hearing was held for Va. M. beginning on March 18, 2022, before a

different circuit court judge. Ultimately, the court found respondent to be fit, willing and able to

care for, protect, train and discipline Va. M., and it allowed custody to stand with respondent.

The court consequently closed the case.

¶ 36    This appeal followed.

¶ 37                              II. ANALYSIS

¶ 38    On appeal, respondent argues the evidence presented in this case did not support the

circuit court's findings that Va. M. was neglected and abused, and therefore, those findings must

be reversed.

¶ 39    In response, the Public Guardian and special prosecutor argue there was sufficient

evidence to support the lower court's neglect and abuse findings as to Va. M., but regardless,

respondent has not shown that the opposite conclusion was clearly evident, as required for us to

reverse those findings.

¶ 40    Under the Juvenile Court Act, once the State has filed a petition to adjudicate a minor

child a ward of the court, a temporary custody hearing must be held, during which the circuit

court has to determine whether there is probable cause to believe that the child is neglected,

abused or dependent, whether it is necessary to remove the child from the home, and whether

reasonable efforts have been made to prevent the child's removal or whether no efforts can be reasonably made to prevent such removal. *In re I.H.*, 238 Ill. 2d 430, 439 (2010); *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004); 705 ILCS 405/2-10 (West 2018). After the child is placed in temporary custody, the lower court proceeds with a two-step process identified by the Juvenile Court Act, which is used to determine whether the child is abused or neglected and whether the child should be removed from his or her parents and made a ward of the court. *In re Arthur H.*, 212 Ill. 2d at 462.

¶ 41    The circuit court first conducts an adjudicatory hearing to determine whether the allegations set forth in the petition that a minor is neglected, abused or dependent, are supported by a preponderance of the evidence. *In re K.T.*, 361 Ill. App. 3d 187, 200 (2005). "Preponderance of the evidence is that amount of evidence that leads a trier of fact to find that the fact at issue is more probable than not." *Id.* At this stage of the proceedings, the focus is whether the child is neglected, not whether the parents are neglectful. *In re Z.L.*, 2021 IL 126931, ¶ 59. If the circuit court finds abuse, neglect, or dependency by a preponderance of the evidence, the court then moves to step two, where the court conducts a dispositional hearing to determine whether it is in the minor child's best interests to be made a ward of the court. *In re K.T.*, 361 Ill. App. 3d 187, 200 (2005).

¶ 42    A circuit court's finding of neglect or abuse is afforded significant deference on appeal and will be disturbed only if it against the manifest weight of the evidence, *i.e.*, only when the opposite conclusion is clearly evident or when the court's ruling is unreasonable, arbitrary, and not based on the evidence. *In re Arthur H.*, 212 Ill. 2d 441, 464 (2004).

¶ 43                    A. Circuit Court's Finding of Neglect

¶ 44    After reviewing the record in this case, we cannot say the circuit court's finding that Va. M. was neglected due to an injurious environment was against the manifest weight of the evidence. Section 2-3(1)(b) of the Juvenile Court Act provides that a "neglected minor" includes any minor under the age of 18 "whose environment is injurious to his or her welfare." 705 ILCS 405/2-3(1)(b) (West 2018); *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 24. "Neglect" is generally defined as the failure to exercise the care that circumstances justly demand, and it encompasses both willful and unintentional disregard of parental duty. *In re K.T.*, 361 Ill. App. 3d 187, 200 (2005). Because the term has no fixed meaning, "neglect" is determined based on the specific circumstances of each case and may vary if those circumstances change. See *In re Arthur H.*, 212 Ill. 2d at 463 (citing *In re N.B.*, 191 Ill. 2d 338, 346 (2000)). Similarly, "[a]n injurious environment is an amorphous concept that cannot be defined with particularity but has been interpreted to include the breach of a parent's duty to ensure a safe and nurturing shelter for her children." *In re Zion M.*, 2015 IL App (1st) 151119, ¶ 24. In short, a parent has a duty to keep his or her child free from harm. *Id.*

¶ 45    Here, Va. M. was adjudicated neglected based on an injurious environment after DCFS received reports that she was sexually assaulted by her older brother when she was seven years old. As set forth above, Va. M. stated in her interview that "S-E-X" occurred once with her brother in Minnesota and that it occurred while respondent was home. Furthermore, Va. M.'s statements were corroborated by brother and respondent who both admitted that the incident occurred. Nevertheless, respondent refused to cooperate with DCFS when she was confronted about the allegations of sexual abuse, and she refused to engage in any social or therapeutic services for Va. M.

¶ 46    While respondent now claims there was no clear evidence of sexual abuse presented below because Va. M. did not know what "S-E-X" meant, this ignores that brother and respondent herself conceded that the sexual assault occurred. And even if respondent was unaware of the alleged sexual abuse to Va. M. at the time it happened, her actions following the discovery of that abuse certainly demonstrated a failure to exercise the care that the circumstances justly demanded. In other words, respondent's refusal to engage in any services for Va. M. after she was sexually abused as a young child was neglectful and amounted to a breach of her parental duty to keep Va. M. free from harm. Accordingly, we conclude that the circuit court properly found Va. M. neglected based on an injurious environment.

¶ 47                        B. Circuit Court's Finding of Abuse

¶ 48    Turning to the circuit court's finding that Va. M. was abused based on a substantial risk of physical injury and emotional harm, we likewise cannot say that finding was against the manifest weight of the evidence. Section 2-3(2)(ii) of the Juvenile Court Act provides that an "abused minor" includes any minor under the age of 18 whose parent or immediate family member, as relevant here, "creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function." 705 ILCS 405/2-3(2)(ii) (West 2018); *In re K.T.*, 361 Ill. App. 3d 187, 201 (2005). Additionally, proof of serious physical injury is not required to sustain a finding of abuse. See *In re J.R.*, 2022 IL App (1st) 221109, ¶ 52 (noting that "[i]t is sufficient that there be substantial risk of physical injury; actual injury is not required").

¶ 49    Here, Va. M. was adjudicated abused based on the same evidence that supported the lower court's neglect finding. Additionally, the court found Va. M. abused because evidence was presented that she was harmed when respondent punished her with a belt.

¶ 50    We previously determined the evidence of sexual abuse to Va. M. was corroborated by the minor's own statements, as well as her brother and respondent's admissions that the abuse occurred. Furthermore, we determined that respondent's actions following the incident constituted a breach of her parental duty to keep Va. M. from harm. Those circumstances put Va. M. at a substantial risk of physical harm that would be likely to result in emotional harm since Va. M. was only seven years old when she was sexually assaulted and was not placed in any services afterward. Given her young age, Va. M. could have been physically hurt from the sexual abuse which could have also led to emotional abuse stemming, at least in part, from a lack of services or understanding about what happened to her.

¶ 51    While that evidence alone is sufficient to support the lower court's abuse finding, there was also evidence presented below that Va. M. was physically hurt when respondent hit her with a belt. As previously set forth, Va. M. stated that respondent punished her with her hand, a belt or a shoe, sometimes leaving marks and bruises. During her interview, Va. M. pointed to a mark on her arm, supposedly left by the belt. While it's difficult to see the mark in the recorded interview, we find no reason to doubt Va. M.'s credibility as respondent admitted that she punished the minor with a belt and would not stop. Regardless, proof of physical injury is not required to sustain a finding of abuse.

¶ 52    Based on the above, we conclude that sufficient evidence existed to support the lower court's finding of abuse as to Va. M. At the very least, respondent has not shown that the opposite conclusion was evident. We therefore affirm the circuit court's judgment.

¶ 53                    C. Circuit Court's Finding of Sexual Abuse

¶ 54    Finally, respondent argues that the State did not properly plead sexual abuse to Va. M. in her petition, and therefore, the circuit court's sexual abuse finding must be reversed.

¶ 55     The Public Guardian, however, argues that respondent forfeited the issue by failing to raise it below. Forfeiture aside, both the Public Guardian and the State assert that even though Va. M.'s petition did not specifically cite sexual abuse, it clearly alleged sexual abuse to the minor by her older brother; thus, respondent had a fair and meaningful opportunity to litigate that issue.

¶ 56    In her reply brief, respondent concedes that she did not raise the issue below but asks this court to consider it under the plain error doctrine.

¶ 57    Initially, we agree with the Public Guardian that respondent forfeited her challenge to the circuit court's sexual abuse finding of Va. M. by failing to argue the issue below, where it could have been remedied. *In re William H.*, 407 Ill. App. 3d 858, 869–70 (2011); see also *In re S.L.*, 2014 IL 115424, ¶¶ 17, 27 (concluding the respondent forfeited her claim that the State failed to comply with statutory notice requirements because she failed to raise the issue in the trial court where the alleged error could have been resolved).

¶ 58    Forfeiture aside, respondent's claim still fails. Section 2-3(2)(iii) of the Juvenile Court Act provides that an "abused minor" includes any minor under the age of 18 whose parent or immediate family member, as pertinent here, "commits or allows to be committed any sex offense against such minor, as such sex offenses are defined in the Criminal Code of 1961 or the Criminal Code of 2012, or in the Wrongs to Children Act, and extending those definitions of sex offenses to include minors under 18 years of age." 705 ILCS 405/2-3(2)(iii) (West 2020); see also *In re Alexis H.*, 401 Ill. App. 3d 543, 558 (2010). Here, as set forth at length above, the

sexual abuse to Va. M. was integral to the factual matrix of proving the alleged neglect and abuse of the minor in the first place. Respondent was apprised of the State's charges in this case and even admits in her reply brief that "[t]he allegations regarding the sexual 'incident' form the very basis of this case" and "hardly came as a surprise to the Special Prosecutor or GAL." While her contentions are somewhat unclear on appeal, we find the sexual assault charge could not have come as a surprise to respondent.

¶ 59    Because respondent cannot show that she was prejudiced by the State's failure to properly plead sexual abuse since she was clearly aware of the sexual abuse allegations in the petition, she cannot prove plain error. See *People v. Hillier*, 237 Ill. 2d 539, 549 (2010) (noting that plain error requires a clear showing that an alleged error affecting substantial rights was committed). Although respondent claims the sexual abuse finding affected her substantial rights to the control, custody and care of Va. M., the minor resides with respondent and remains under her custody, so those rights have not been affected. *Cf. In re M.H.*, 196 Ill. 2d 356, 365 (2001) (in determining whether parental rights should be terminated, the court noted that the control, custody and care of a child is a fundamental interest and will not be terminated lightly). Accordingly, we affirm the circuit court's finding of sexual abuse to Va. M.

¶ 60                                III. CONCLUSION

¶ 61    Based on the foregoing, we conclude that the special prosecutor proved by a preponderance of the evidence that Va. M. was neglected and abused due to an injurious environment and a substantial risk of physical injury and emotional harm. We therefore affirm the circuit court's judgment.

¶ 62    Affirmed.